Robin BARNES, Respondent,

v.

**TREASURER OF MISSOURI AS CUSTODIAN OF SECOND INJURY FUND, Appellant,**

and

**Park Express, LLC, Respondent.**

No. ED 105508

Missouri Court of Appeals, Eastern District, DIVISION FIVE.

Filed: October 31, 2017

752

FOR APPELLANT: Leslye M. Winslow, 815 Olive Street, Suite 2000, St. Louis, Missouri 63101.

FOR RESPONDENT ROBIN BARNES: Crista Johnson, 319 N. 4th Street, Suite 212, St. Louis, Missouri 63102.

FOR RESPONDENT PARK EXPRESS, LLC: John Robert Fox, 8301 State Line Road, Suite 105, Kansas City, Missouri 64108, Daniel Kenneth Luebber-

ing, 4636 Pennsylvania Avenue, #1S, Kansas City, Missouri 64112.

## OPINION

James M. Dowd, Chief Judge

The Treasurer of Missouri, as Custodian of the Second Injury Fund, appeals the award of the Labor and Industrial Relations Commission which found the Fund partially liable to Robin Barnes ("Claimant") for his permanent total disability benefits. The Treasurer claims that the Commission erred by finding that Claimant was permanently and totally disabled due to a combination of his preexisting disabilities and the disability from the work injury giving rise to this case. The Treasurer asserts that such a finding and the Commission's award were not supported by competent and substantial evidence and were against the overwhelming weight of the evidence. Specifically, the Treasurer argues that the Commission made its own determination of medical causation unsupported by medical expert testimony by finding Fund liability where no single expert testified both that Claimant was permanently and totally disabled and that such resulted from a combination of preexisting disabilities and the disability from the last work injury. The Treasurer also contends that the Commission violated the hearsay rule with regard to the admission of the report of a non-testifying examining physician. Finding no error, we affirm.

## Factual and Procedural Background

On November 11, 2009, Claimant, an employee of the airport parking and shuttle company Park Express, LLC ("Employer"), injured his lower back while changing a tire on a shuttle bus. Employer initially sent Claimant to an occupational medicine clinic to treat his lower-back and buttocks pain which radiated down his right leg. Claimant received medication, physical therapy, and an MRI. Claimant's pain spread to both hips and both thighs over the course of the next month, and on December 14, 2009, Employer sent Claimant to Dr. James Doll for further evaluation and treatment. Dr. Doll prescribed three epidural steroid injections, medication, physical therapy, and ordered another MRI. Dr. Doll diagnosed Claimant with inflammation at the L5-S1 level of the spine, but released Claimant from care and retuned him to work without restrictions.

After Employer denied Claimant's request for additional treatment for his ongoing back pain, Claimant sought treatment on his own first from Dr. William Droege, a chiropractor, and then from Dr. George Schoedinger, a neurosurgeon. In his June 2010 report, Dr. Schoedinger diagnosed disc protrusions at both the L4-L5 and L5-S1 levels of the spine, and recommended surgery. After Dr. Schoedinger retired, Claimant continued treatment with an orthopedic surgeon, Dr. Keith Wilkey. Dr. Wilkey diagnosed recurrent disc herniation at L5-S1 and central disc herniation at L4-L5. He recommended a two-level fusion surgery, which involved fusing Claimant's vertebrae at two levels— L5-S1 and L4-L5. When Employer refused to authorize any further treatment, Claimant's own health insurance provider authorized fusion surgery but only at the L5-S1 level.

On November 15, 2011, Dr. Wilkey took Claimant to surgery performing a decompression procedure at the L4-L5 level and fusion with hardware at L5-S1. Claimant experienced some relief after the surgery, but his symptoms returned over time. During the course of post-operative treatment, Dr. Wilkey imposed increasingly strict permanent restrictions on Claimant's activities. He directed Claimant to limit lifting to fewer than 20 pounds, to alternate

standing and sitting, and to take a break every two hours to recline for 15 minutes. He also warned that Claimant would probably need to be absent from work twice a month and would need narcotic pain medications on an ongoing basis to treat his back pain.

Employer terminated Claimant's employment in April 2010 since he was unable to return to full duty. Claimant continued to try to work elsewhere until the November 15, 2011 surgery by Dr. Wilkey. Claimant has not returned to any kind of work since the surgery.

*Claimant's prior injuries and pre-existing disability.*

Before his November 11, 2009 work injury, Claimant suffered a previous lower-back injury. In May 2000, Claimant hurt his lower back in a motor vehicle accident while working for the Missouri Department of Transportation. As a result, in September 2000, Claimant underwent surgery on his spine at the L5-S1 level, which involved a right-sided laminectomy and discectomy. Laminectomy involves the removal of a portion of the vertebrae bone and discectomy means that the disc between the L5 and S1 vertebrae was removed.

While Claimant was released to return to work full-duty with no permanent restrictions, he settled his workers' compensation claim with his employer based on a stipulation that he suffered permanent partial disability of "25% of the body as a whole referable to the lower back" as a result of the November 2000 accident.

*The 2009 workers' compensation claim giving rise to this action.*

As a result of the November 11, 2009 injury he sustained while changing a tire,

Claimant filed a claim for workers' compensation benefits asserting that he was permanently and totally disabled. The claim was tried before an administrative law judge ("ALJ"). The ALJ concluded that the November 11, 2009 work injury was the prevailing factor[1] in causing Claimant's medical condition at L4-L5 and L5-S1 and the resulting disability, and that Claimant was permanently and totally disabled due to the effects of the last work injury considered in isolation. As a result, the ALJ awarded Claimant workers' compensation benefits to be paid by Employer and found the Second Injury Fund had no liability for such benefits. The ALJ also excluded from evidence as hearsay the report of a non-testifying examining physician.

Employer appealed the ALJ's award and findings to the Commission. The Commission modified the ALJ's finding on the nature and extent of disability resulting from the last injury and reversed the ALJ's decision on the issues of Employer and Fund liability. The Commission found that the November 11, 2009 work injury did not, considered in isolation, cause Claimant to be permanently and totally disabled, but that Claimant was rendered permanently and totally disabled as a result of the combination of preexisting disabilities and the disability from the last work injury. Accordingly, the Commission awarded Claimant permanent partial disability benefits from Employer and permanent total disability benefits from the Second Injury Fund. The Commission also reversed the ALJ's exclusion of the hearsay report referenced above. The Commission found, however, that the report was not persuasive, precisely because it constituted hearsay.

This appeal follows.

---

1. The prevailing factor is the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.

§ 287.020.3(1). All statutory references are to RSMo 2016 unless otherwise indicated.

## Standard of Review

In a workers' compensation case, we review only questions of law and may modify, reverse, remand for rehearing, or set aside the Commission's award only upon the following grounds: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo. banc 2012) (citing § 287.495.1). In the absence of fraud, the Commission's findings of fact are conclusive and binding. *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015) (citing § 287.495.1). We defer to the Commission's determinations with regard to witness credibility and the weight accorded to conflicting evidence. *Id.* But we review issues of law *de novo* and accord no deference to the Commission's interpretation of the law. *Id.*

## Discussion

The Treasurer's challenge to the Commission's finding of Second Injury Fund liability rests primarily on the fact that no single expert in this case testified both that Claimant was permanently and totally disabled and that such resulted from a combination of preexisting disabilities and the disability from the last work injury. We are unpersuaded because there is no requirement that a single expert provide all such opinions, and because the Commission's award is amply supported on this record.

The Treasurer is correct that medical causation, which is not within common knowledge or experience, must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause. *Malam v. Mo. Dept. of Corr.*, 492 S.W.3d 926, 929 (Mo. banc 2016). Expert opinion is required. *Pruett v. Fed. Mogul Corp.*, 365 S.W.3d 296, 306 (Mo. App. S.D. 2012) ("[W]here the condition presented is a sophisticated injury that requires surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of preexisting disability and its extent, the proof of causation is not within the realm of lay understanding nor—in the absence of expert opinion—is the finding of causation within the competency of the administrative tribunal.").

But there is no requirement that a single expert's testimony wholly support the Commission's determinations of both causation and the nature and extent of disability. The record need not contain a single expert opinion addressing the entirety of the claimant's condition. *Patterson v. Cent. Freight Lines*, 452 S.W.3d 759, 766 (Mo. App. E.D. 2015). Rather, the Commission may consider the opinion of multiple experts of differing specialties to arrive at its factual determination as to the parts and sum of the claimant's conditions. *Id.* And the determination of a specific amount or percentage of disability awarded to the claimant is a finding of fact within the special province of the Commission. *Maness v. City of De Soto*, 421 S.W.3d 532, 542 (Mo. App. E.D. 2014).

Here, Claimant's experts Dr. Wilkey and Mr. Kaver testified that Claimant was unemployable, or permanently and totally disabled, as a result of the 2009 injury. Dr. Wilkey asserted that that injury was the prevailing factor in causing Claimant's disability at both the L4-L5 and L5-S1 levels. One of Employer's experts, Dr. Lange, testified in deposition that Claimant suffered permanent partial disability stemming from the lumbar spine of 40% of the whole person, with 15% attributable to the last work injury and 25% to prior injuries. Dr. Lange testified that the last work inju-

ry was the prevailing factor in causing Claimant's disability at L4-L5, but not at L5-S1, which he opined was caused by prior injuries.

We find that the record fully supports the Commission's findings and conclusions in this case. Dr. Wilkey's and Mr. Kaver's testimony support the conclusion that Claimant became permanently and totally disabled as a result of the last work injury, but the record also supports Dr. Lange's conclusion that some of Claimant's disability was attributable to prior injuries. Thus, we find no error because the record clearly supports the Commission's conclusion that Claimant was permanently and totally disabled due to a combination of preexisting disabilities and the disability from the last work injury.

■ Nor do we find that the Commission's award must be vacated because of the Commission's failure to apply Missouri hearsay rules to the admission of the report of a non-testifying examining physician. The Commission stated that it did not rely on the report the Treasurer asserts was improperly admitted as a result of the Commission's decision not to apply these rules. The Commission concluded that the report constituted hearsay-within-hearsay and lacked substantial probative value. And there is no evidence in the record that the Commission relied on the report to arrive at its award in this case. We deny all three of the Treasurer's points on appeal.

### Conclusion

For the reasons stated above, we affirm the Commission's award.

Lawrence E. Mooney, J., and Robin Vannoy, Sp. J., concur.