

# In the
# Missouri Court of Appeals
## Western District

LOIS MCDOWELL,      )
     )
       Respondent,      )    **WD82076**
     )
v.      )    **OPINION FILED: April 16, 2019**
     )
ST. LUKE'S HOSPITAL OF KANSAS   )
CITY,      )
     )
       Appellant.      )

### Appeal from the Labor and Industrial Relations Commission

Before Division One: Cynthia L. Martin, Presiding Judge, Victor C. Howard, Judge and
Thomas H. Newton, Judge

St. Luke's Hospital of Kansas City ("St. Luke's") appeals the decision of the Labor

and Industrial Relations Commission ("Commission") awarding workers' compensation

benefits to its employee, Lois McDowell ("McDowell"), for a wrist injury she suffered

after falling at work. St. Luke's argues that the Commission erroneously concluded that:

(1) the risk that caused McDowell's injury was causally connected to McDowell's work;

(2) McDowell's injury was not directly or indirectly the result of an idiopathic cause; and

(3) McDowell was entitled to an award of permanent partial disability. Finding no error, we affirm.

## Factual and Procedural Background[1]

McDowell has worked at St. Luke's since 1971. At the time of her injury, McDowell was a Laboratory Scientist 1. Her normal workings hours were from 3:00 p.m. to 11:30 p.m. Typically, McDowell arrived about 15 minutes before 3:00 p.m. and would park on the fourth level of a high-volume parking garage used exclusively by St. Luke's employees. She would descend an elevator and continue through the north-facing parking garage exit into the hospital. As she arrived for work, she frequently encountered other employees who also worked in St. Luke's as they departed for the day. Over time, as McDowell aged, she began experiencing difficulties with these arrival practices as she could not walk long distances while carrying work and personal items.

In 1996, an orthopedic specialist began treating McDowell for pain in her hips, knees, and ankles. The pain affected McDowell's gait, causing her to limp. In 2013, the orthopedic treatment culminated in McDowell undergoing a right hip replacement. After her recovery and return to work, McDowell used a support cane. While using the cane, McDowell experienced increased difficulty carrying items from her vehicle in the St.

---

[1]On appeal, McDowell filed a Motion to Dismiss, or alternatively, Strike portions of St. Luke's brief because of its failure to comply with 84.04(c). The Motion was taken with the case. "Whether to dismiss an appeal for briefing deficiencies is discretionary." *Lanham v. Div. of Emp't Sec.*, 340 S.W.3d 324, 327 (Mo. App. W.D. 2011). "It is always our preference to resolve an appeal on the merits of the case rather than to dismiss an appeal for deficiencies in the brief." *Id*. While St. Luke's brief may be deficient, the deficiencies do not impede our ability to decide the legal issues presented. The Motion is denied.

2

Luke's parking garage to her work station within the hospital. A supervisor provided McDowell with a two-wheeled rolling cart to more easily transport her belongings.

After McDowell stopped using her support cane, she continued to use the cart upon arrival to and departure from work each workday to transport her purse, lunch, medications, work schedule, and occasionally other employment-related paperwork. McDowell would appropriately store the cart during work hours and upon arriving home from work McDowell would leave the cart in her car. McDowell only used the cart to transport belongings to and from work.

On July 13, 2016, McDowell arrived at work and parked on the fourth floor of the parking garage. She descended the elevator while pulling the rolling cart. She exited the elevator, and continued to exit the parking garage through the north door. At the north door, she encountered two other employees. One employee opened the door for her, while the second employee stood next to the other, somewhat blocking McDowell's path through the door. McDowell proceeded through the door, and attempted to maneuver to the right of the second employee. In doing so, the wheel of the rolling cart, which McDowell pulled, caught on the door frame. This jerked McDowell, causing her to fall to the ground, fracturing her left wrist. Shortly thereafter, McDowell underwent surgery to repair the fracture and was ordered off work until August 29, 2016. McDowell filed a claim for workers' compensation benefits on August 31, 2016.

During a hearing before an Administrative Law Judge ("ALJ"), McDowell testified that she encountered other St. Luke's employees at the elevators and parking garage's north exit 75 percent of the time she used the exit. McDowell testified that her orthopedic

3

surgeon had noted in medical records that she was a fall risk due to her hip replacement. But, McDowell also testified that, except for the fall on July 13, 2016, she had never before fallen because of pain or weakness associated with her hips.[2]

During the hearing, two medical reports were presented that evaluated McDowell's left wrist injury and recovery. Both reports concluded that she had a permanent partial disability because of the wrist injury. McDowell testified that she continues to suffer from pain, decreased grip strength, and decreased range of motion in her left wrist, but has been able to resume her pre-injury job duties with minor accommodations.

The ALJ awarded McDowell workers' compensation benefits in a written decision on March 2, 2018 ("ALJ Award"). The ALJ Award found that the "risk source (pulling a cart of work related supplies through a congested entryway) [was] related to the workplace and not a risk source Ms. McDowell would be likely to encounter in her non-work life." The ALJ Award further concluded that McDowell's injury arose in the course and scope of employment. The ALJ Award also found that the McDowell's fall was not the result of an idiopathic cause. The ALJ Award included an award of permanent partial disability of 25 percent at the 200 week level of the left upper extremity. St. Luke's appealed the ALJ Award to the Commission. The Commission affirmed and incorporated the ALJ Award.

St. Luke's timely appeals.

---

[2]Evidence detailed a fall McDowell sustained in February 2014 that occurred when McDowell slipped on ice while shoveling snow.

4

## Standard of Review

"To the extent that the Commission affirms and adopts the ALJ's findings and conclusions, [this Court] review[s] the ALJ's findings and conclusions." *Jefferson City Country Club v. Pace*, 500 S.W.3d 305, 311 (Mo. App. W.D. 2016). Section 287.495.1[3] provides that our review is limited to:

> [O]nly questions of law and [the Court] may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1)    That the commission acted without or in excess of its powers;
>
> (2)    That the award was procured by fraud;
>
> (3)    That the facts found by the commission do not support the award;
>
> (4)    That there was not sufficient competent evidence in the record to warrant the making of the award.

"We review the whole record to determine whether there is sufficient and substantial evidence to support the award or if the award is contrary to the overwhelming weight of evidence." *Gleason v. Treasure of State of Missouri–Custodian of Second Injury Fund*, 455 S.W.3d 494, 497 (Mo. App. W.D. 2015). "This court defers to the Commission's factual findings and recognizes that it is the Commission's function to determine credibility of witnesses." *Pace*, 500 S.W.3d at 312. "When the relevant facts are not in dispute, the issue of whether an accident arose out of and in the course of employment is a question of

---

[3]All statutory references are to RSMo 2000 as supplemented through the time of McDowell's injury in 2016.

law requiring *de novo* review." *Miller v. Missouri Highway and Transp. Com'n*, 287 S.W.3d 671, 672 (Mo. banc 2009).

**Analysis**

St. Luke's Brief asserts three points on appeal. First, St. Luke's argues that the Commission erred because there was not sufficient competent evidence to support a finding that McDowell's injury had a causal connection to her work. Second, St. Luke's argues that the Commission erred in finding McDowell's injury was not a result of idiopathic causes. Third, St. Luke's argues the Commission erred in awarding permanent partial disability to McDowell. At oral argument, St. Luke's abandoned its second point on appeal. We therefore address only points one and three on appeal.

**Point One**

St. Luke's asserts that the Commission erred by finding a causal connection between McDowell's injury and her work. It argues there was no causal nexus between McDowell's use of a rolling cart and her work because the cart was not necessary for McDowell to complete her work. Without a sufficient causal nexus between the cart and her work responsibilities, St. Luke's posits, the Commission could not have found that McDowell's injury arose from the course and scope of her employment.

Under the Missouri Workers' Compensation Law ("Act"), an employer "shall be liable, irrespective of negligence, to furnish compensation under the provisions of the [the Act] for personal injury . . . of the employee by accident . . . arising out of and in the course of the employee's employment." Section 287.120.1. Whether an injury arises out of the course and scope of employment is governed by Section 287.020.3, which provides:

6

(2)     An injury shall be deemed to arise out of and in the course of employment only if:

> (a)     It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and

> (b)     It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

St. Luke's does not contest that McDowell's fall was the prevailing factor in causing her wrist injury. Instead, St. Luke's limits its argument in its first point on appeal to the application of 287.020.3(2)(b).

"For an injury to be deemed to arise out of and in the course of the employment under section 287.020.3(2)(b), the claimant employee must show a causal connection between the injury at issue and the employee's work activity." *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 510 (Mo. banc 2012). Our courts have applied a two-part test to determine whether there is a causal connection between an injury and an employee's work activity. *See Gleason*, 455 S.W.3d at 499 (discussing *Miller*, 287 S.W.3d at 674; and *Johme*, 366 S.W.3d at 511); *see also Wright v. Treasure of Missouri as Custodian of Second Injury Fund*, 484 S.W.3d 56, 62 (Mo App. E.D. 2015). The two-part test "first requires identification of the risk source of a claimant's injury, that is, *identification of the activity that caused the injury*, and then requires a comparison of that risk source or activity to normal nonemployment life." *Gleason*, 455 S.W.3d at 499 (emphasis original).

Here, the Commission found that "the activity that gave rise to Ms. McDowell's injury was pulling a two-wheeled cart through a congested doorway." The Commission

7

found that "the risk source (pulling a cart of work related supplies through a congested entryway) [was] related to the workplace and not a risk source Ms. McDowell would be likely to encounter in her non-work life." St. Luke's does not challenge the Commission's characterization of the activity that gave rise to McDowell's injury -- i.e. the risk source. Rather, relying on *Johme*, 366 S.W.3d at 511-12, St. Luke's asserts McDowell's cart was not work related, and thus, McDowell was merely injured while at work, rather than *because* of work. *Johme* is inapposite.

In *Johme*, the Supreme Court of Missouri made clear that it is irrelevant whether an injury occurs while the employee is engaged in a work-related activity, but instead the inquiry is whether the injury is *deemed to arise out of employment*. *Id.* at 511-12 (discussing *Miller*, 287 S.W.3d at 674). The Court reversed the Commission's award of workers' compensation benefits to an employee when the employee turned her ankle after falling off her sandal while in the employee breakroom making coffee. *Id.* at 511-12. The Court held that an injury was not compensable merely because it was work related or incidental to work, but "rather, the employee's injury [was] only compensable if it [was] shown to have resulted from a hazard or risk to which the employee would not be equally exposed in 'normal nonemployment life.'" *Id.* at 511. In applying 287.020.3(2)(b), the Court expressly cautioned against focusing the risk source analysis on "whether [the employee's] activity of making coffee was incidental to her employment." *Id.* Instead, it held that "the issue . . . [was] whether the cause of [the employee's injury]--turning and twisting her ankle and falling off her shoe--had a causal connection to her work activity *other than the fact that it occurred in her office's kitchen while she was making coffee.*"

8

*Id.* at 511. Because no condition of employment other than mere location factored into the employee's injury, the Court compared the risk causing her injury to the risk posed to the employee in her nonemployment life. *Id.* The Court found that "***no evidence*** showed that she was not equally exposed to the cause of her injury . . . while in her workplace making coffee than she would have been when she was outside of her workplace in 'normal nonemployment life.'" *Id.*

*Johme* stands in contrast to the present case. In *Johme*, the employee's injury was caused by falling off a shoe while at work. There, nothing inherent to the workplace location or activity caused the employee to fall off her shoe. Here, the cause of McDowell's injury was predicated on a risk inherent to St. Luke's workplace--a congested exit's doorframe in which a wheel from McDowell's rolling cart was caught.[4] Assuming all other requirements of the statute are satisfied, an injury may be deemed "arising out of employment" where the cause of the injury is due to some "condition of employment." *See Miller*, 287 S.W.3d 671, 674 (Mo. banc 2009); *see also Stricker v. Children's Mercy Hosp.*, 304 S.W.3d 189 (Mo. App. W.D. 2009) (employee's injury compensable when dress-code compliant shoes were deemed the risk source of the injury); *Dorris v. Stoddard County*, 436 S.W.3d 586 (Mo. App. S.D. 2014) (injury compensable when employee tripped on

---

[4]St. Luke's stipulated that the parking garage where McDowell was injured was owned and controlled by St. Luke's. Nowhere in its argument does St. Luke's address the premises doctrine, which extends liability of the employer when an employee is injured "where the employer owns or controls the area where the accident occurs." *See* section 287.020.5; *see also Narens*, 485 S.W.3d at 818-19; *Missouri Dep't of Social Services v. Beem*, 478 S.W.3d 461, 465 (Mo. App. W.D. 2015). We have held "the legislature clearly contemplated and accepted compensability of injuries sustained as a result of work-related risks even though an employee was not engaged in performance of job duties at the time (e.g. going to or coming from [an] employer's worksite)." *Beem*, 478 S.W.3d at 465. Here, the work-related risk was navigating a congested entryway while pulling a rolling cart. We see no reason to narrowly limit the work-related risk to McDowell's rolling cart.

9

crack in street); *Duever v. All Outdoors, Inc.*, 371 S.W.3d 863 (Mo. App. E.D. 2012) (injury compensable when employee slipped on ice in work parking lot); *Lincoln Univ. v. Narens*, 485 S.W.3d 811 (Mo. App. W.D. 2016) (injury compensable when risk source was crowded sidewalk with a steep drop-off)*; Pope v. Gateway to W. Harley Davidson*, 404 S.W.3d 315 (Mo. App. E.D. 2012) (injury compensable when employee fell while descending a stairway).[5]

*Johme* also stands in contrast to McDowell's case because the *Johme* court found *"no evidence"* that the employee was not equally exposed to the cause of the injury in nonemployment life. Here, there was substantial and sufficient competent evidence to support the Commission's finding that McDowell was not equally exposed to the cause of her injury outside of her workplace in nonemployment life. McDowell testified that she *only* used the cart, which had been provided by a supervisor, when arriving to and departing from work; that when she arrived home from work she carried the items in the rolling cart inside her home and left the rolling cart in her vehicle; and that she exclusively used the north parking garage door because it was the door "closest to her destination." Moreover, despite cross-examination regarding McDowell's use of the rolling cart and the location of McDowell's injury, St. Luke's failed to adduce any evidence suggesting that McDowell was exposed to the cause of her injury -- pulling a cart of work-related supplies through a congested entryway -- in nonemployment life.

---

[5]This observation is bolstered by the fact that substantial and sufficient competent evidence supports the Commission's finding that McDowell's cart was work related. *See infra* note 7 (discussing *Narens* and *Pope*).

10

Undeterred, St. Luke's concedes that the "cause of [McDowell's] injury was catching the wheel of the assistive device she needed to use due to her hip condition," [App. Br., p. 28], but argues that because use of the cart was necessitated by McDowell's hip replacement, the cause of the fall is a risk source that is unrelated to McDowell's employment. When pressed at oral argument to explain its position, St. Luke's confirmed that it reads section 287.020.3(2)(b) to render non-compensable any injury in the workplace that involves the use of an assistive device to abate or ameliorate a pre-existing physical or medical condition. We are aware of no authority -- and St. Luke's cites none -- that suggests the use of an assistive device as a result of an alleged pre-existing condition renders an injury involving use of the assistive device non-compensable. St. Luke's attempt to impose such a construction on section 287.020.3(2)(b) is unavailing.

In reality, by arguing that that the Commission should have found that the cause of the accident was McDowell's hip replacement since she was using a rolling cart required by that condition, St. Luke's is challenging the Commission's causation finding. St. Luke's argument ignores our standard of review. The Commission found:

> The evidence is clear that Ms. McDowell's fall was caused by the wheels of her cart "jerking" her and causing her to fall. Ms. McDowell's prior hip surgeries and admitted prior "limp" in no way caused or contributed to cause the fall. Further her statement "With my artificial right hip replacement, I lost my balance and fell down" is not an admission this fall was idiopathic.[6]

---

[6]The Commission's reference to whether the cause of McDowell's fall was idiopathic underscores that St. Luke's took the position before the Commission that McDowell's injury was non-compensable pursuant to section 287.020.3(3) because it was the result of an idiopathic cause--her hip condition. That explains, of course, St. Luke's second point on appeal, which alleged that the Commission erred in finding McDowell's injury was not a result of idiopathic causes. St. Luke's abandoned its second point on appeal during oral argument, but recast its claim that the cause of McDowell's accident was her hip replacement in an effort to counter the Commission's finding that there was a causal connection between McDowell's injury and her work. Despite St. Luke's creative effort to recast its causation contention, there is no escaping that however framed, St. Luke's is arguing that the cause of McDowell's accident was an idiopathic condition. An idiopathic condition is one that is "peculiar to the individual: innate."

11

But for the need to move to the right causing her cart to get stuck, which then caused her to be pulled off balance, she would not have fallen.

"In the absence of compelling evidence establishing the absence of causation, [] causation is for the [fact-finder]" to determine. *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 339 (Mo. App. E.D. 2000) (quotation omitted). We defer to the Commission's factual finding regarding causation.

The Commission did not err when it deemed McDowell's injury arose out employment, as required by 287.020.3(2)(b).[7]

_____

*Ahern v. P. & H, LLC*, 254 S.W.3d 129, 132 (Mo. App. E.D. 2008). "Any claim that an injury is non-compensable because it had an idiopathic cause is in the nature of an affirmative defense." *Con-Agra Foods, Inc. v. Phillips*, 527 S.W.3d 74, 77 (Mo. App. W.D. 2017). St. Luke's bore the burden of proving the affirmative defense that McDowell's injury was not compensable under section 287.020.3(3) because it resulted "directly or indirectly from idiopathic causes." The Commission found St. Luke's failed to sustain its burden to establish this affirmative defense. By abandoning its second point on appeal challenging this finding, St. Luke's has abandoned its affirmative defense, and thus its position that an idiopathic cause peculiar to McDowell--her hip condition and the assistive devices she was required to use as a result--caused the injury.

[7]In reaching its findings, the Commission relied on *Lincoln University v. Narens*, 485 S.W.3d 811 (Mo. App. W.D. 2016) and *Pope v. Gateway to W. Harley Davidson*, 404 S.W.3d 315 (Mo. App. E.D. 2012). St. Luke's argues that *Pope* and *Narens* are distinguishable from the present case. We disagree.

In *Narens*, an employee was awarded workers' compensation when she was injured after stepping off the steep edge of a crowded sidewalk while leaving work. *Narens*, 485 S.W.3d at 818. There, the employee testified that her injury occurred when she saw students approaching her on the sidewalk and stepped to the right to avoid them. *Id.* at 813. When the employee stepped to the right, she fell off the steep edge of the sidewalk and injured her ankle. *Id.*

In *Pope*, the Eastern District affirmed an award of workers' compensation when an employee at a motorcycle sales retailer slipped descending stairs at work while wearing work boots and carrying a work-required helmet. *Pope*, 404 S.W.3d at 321-22. The employee was required to wear the helmet while moving motorcycles. *Id.* at 320. The court rejected an employer's argument that the employee was "equally exposed to the risk of walking down stairs while carrying a work-required helmet outside of work," when the employer only showed that the employee wore boots and a helmet outside of work. *Id.*

In distinction to *Narens*, St. Luke's argues that the evidence does not support the Commission's finding that the entryway was congested at the time of McDowell's injury. But just as in *Narens*, where the employee testified there were students approaching her on the sidewalk, there was substantial and sufficient evidence to support the Commission's finding that the entryway was congested at the time of the McDowell's injury. McDowell testified that when she arrived to work, she typically encountered employees in the entryway where the injury occurred 75 percent of the time; that on the date of her injury she did not observe anyone in the vestibule of the parking garage exit, but she did observe two other employees that were entering the parking garage after their shifts had ended; that as one employee opened the door for her, the second employee stood in front of the open doorway requiring her to maneuver to the right of the second employee; and that when she attempted to maneuver to the right of the second employee, the rolling cart's wheel caught in the door frame, jerking her, and thereby causing her to fall down injuring her wrist.

In distinction to the work-required helmet and boots in *Pope*, St. Luke's argues that insufficient competent evidence supports the Commission's finding that McDowell's use of the roll cart was necessary for her work. St.

12

Point One denied.

## Point Three

St. Luke's third point on appeal argues that there was not substantial and sufficient competent evidence to warrant an award of permanent partial disability. St. Luke's asserts the Commission erred in awarding 25 percent permanent partial disability at the 200-week level of the upper left extremity because McDowell was no longer under medical restrictions and had returned to her pre-injury job duties.

Section 287.190 defines a permanent partial disability and sets out the method for calculating compensation for a permanent partial disability. A permanent partial disability is "a disability that is permanent in nature and partial in degree." Section 287.190.6(1). Permanent partial disability shall "be demonstrated and certified by a physician." Section 287.190.6(2). A "medical report" evaluating an employee's injury and estimating the percent of permanent partial disability may be produced by either employer or employee. Section 287.210.5. If produced according to section 287.210, a medical report evaluating an employee's injury and providing an estimate of percentage of permanent partial

Luke's reads *Pope* too narrowly. Nothing in *Pope* suggests that the fact the employee was carrying work-related items was essential to a finding of compensability when the employee slipped descending stairs. Rather the court recognized evidence that the employee wore a motorcycle helmet and boots outside of work, and focused its inquiry on whether substantial and competent evidence could support a finding that the risk source of the injury was posed equally to the employee in his normal nonemployment life. *Pope*, 404 S.W. at 320. No such evidence was presented in the record to permit such a finding. *Id.* That the employee in *Pope* was carrying work-related items additionally supported the court's finding that the injury was deemed to arise from employment.

Even assuming, *arguendo*, that a finding that McDowell's cart was work-related was essential for the compensability of her injury, we would find substantial and sufficient competent evidence in the record. McDowell testified that the rolling cart was given to her by a supervisor; that she only used that rolling cart to transport items to and from work; that she carried in the rolling cart her lunch, purse, medications, and occasionally employment-related paperwork; that she had little choice but to bring her lunch because she was unable to walk to the employee cafeteria in the 30-minute allotted time for lunch breaks; and that although against work policy, she carried, even if infrequently, employment-related paperwork home with her in the rolling cart so that she could complete the paperwork at home. This is substantial and sufficient competent evidence that the cart was work related.

13

disability is admissible evidence. Section 287.210.2. "The determination of a specific amount or percentage of disability awarded to the claimant is a finding of fact within the special province of the Commission." *Barnes v. Treasurer of Missouri as Custodian of Second Injury Fund*, 532 S.W.3d 751, 755 (Mo. App. E.D. 2017). In considering the medical report, the Commission is not bound by any doctor's "exact percentages and is free to find a disability rating higher or lower than that expressed" in the medical report. *Jefferson City Country Club v. Pace*, 500 S.W.3d 305, 322–23 (Mo. App. W.D. 2016).

Here, two medical reports were considered by the Commission. Dr. Anne Rosenthal's medical report provided that at the time of her evaluation McDowell had continued to suffer from "radial sided wrist pain;" that McDowell's left hand strength was decreased, and range of motion limited; that McDowell experienced daily pain causing loss of daily function; and ultimately that McDowell had a 35 percent permanent partial disability at the 200-week level. Dr. Erich Lingenfelter also produced a medical report considered by the Commission, which found that McDowell continued to experience pain in her wrist. The Lingenfelter report concluded that McDowell's wrist injury resulted in an 8 percent permanent partial disability.

McDowell testified that while she has had to make minor accommodations to complete work-related tasks, she was largely uninhibited by the disability and she had no medical restrictions at the time of her testimony. We reject's St. Luke's argument that McDowell's testimony about workplace accommodations forecloses the right to a permanent partial disability award, particularly where the presence of a permanent partial disability was established by medical evidence. *See* Section 287.190.6(2) (providing that

14

"in determining compensability and disability . . . objective medical findings shall prevail over subjective medical findings" and "objective medical findings are those findings demonstrable on physical examination or by appropriate tests or diagnostic procedures."). The medical reports included in the record afford substantial and sufficient competent evidence to support the Commission's award of a 25 percent permanent partial disability at the 200-week level of the left upper extremity.

Point Three denied.

## Conclusion

We affirm the Commission's award.

_____
Cynthia L. Martin, Judge

All concur

15