

# In the
# Missouri Court of Appeals
## Western District

ROMMAE HAYES,                              )
                                          )
                    Appellant,            )   WD82256
                                          )
v.                                        )   OPINION FILED:
                                          )   September 3, 2019
GINGER C, LLC AND TREASURER               )
OF THE STATE OF MISSOURI,                 )
CUSTODIAN OF THE SECOND                   )
INJURY FUND,                              )
                                          )
                    Respondents.          )

**Appeal from the Labor and Industrial Relations Commission**

Before Division One:  Cynthia L. Martin, Presiding Judge, Victor C. Howard, Judge and
Alok Ahuja, Judge

Rommae Hayes ("Hayes") appeals from the Labor and Industrial Relations Commission's ("Commission") final award denying his claim for workers' compensation benefits.  Hayes asserts that the Commission's denial of benefits was erroneous because: (1) the overwhelming weight of the evidence established that, at the time of his accident, Ginger C, LLC ("Ginger C") was a construction industry employer having at least one employee or alternatively an employer with five or more employees, and that Hayes was

an employee of Ginger C; and (2) the overwhelming weight of the evidence established that a statutory employment relationship existed between Hayes and Ginger C. Finding no error, we affirm.

## Factual and Procedural History

Nakhle Asmar ("Asmar") is the owner of Ginger C. Ginger C owns houses and apartments that it rents to students, low-income residents, and veterans in the Columbia, Missouri area. Ginger C's sole source of income is rent paid by tenants.

In February 2013, Hayes was released from prison on an early release program, and lived at Reality House in Columbia, Missouri. Hayes was required to be employed at least forty hours a week. Another Reality House resident, Weston Magee ("Magee"), performed renovation, repair, and maintenance work on Ginger C's rental properties. Hayes's parole officer asked Magee to assist Hayes in obtaining a job with Ginger C. Hayes had forty years of experience in construction, including experience paving and performing concrete and highway work.

Hayes began performing renovation, repair, and maintenance on Ginger C's rental properties in April 2013. Asmar testified that Ginger C does not undertake to perform any construction work beyond renovating, repairing, or conducting maintenance on its own rental properties. Asmar testified that in 2013, Ginger C used independent contractors to perform this work. Asmar testified that he advised persons hired to work on Ginger C's rental properties that they were independent contractors working by the job. Ginger C issued 1099 forms to persons hired to perform renovation, repair, or maintenance work on its rental properties, and did not withhold taxes from checks paid for work performed.

2

Ginger C did not provide health insurance, vacation days, or sick leave to any of the persons hired to perform renovation, repair, or maintenance work on its rental properties.

Asmar testified that Hayes was not always available to perform renovation, repair, or maintenance work on Ginger C's rental properties because Hayes worked independently on other properties, including projects in Moberly. Asmar testified that when Hayes was available, Hayes would either submit a bid for work that needed to be performed, or he would bill Ginger C at an hourly rate. Asmar testified that if Hayes did not first bid for a job, Hayes received $12 per hour, plus the cost of any materials provided. Ginger C also reimbursed Hayes for the use of his personal truck. Asmar testified that he received all calls for maintenance from Ginger C's tenants, and that he would direct maintenance calls to various independent contractors, including Hayes. Asmar testified that Hayes was not obligated to accept a request to perform maintenance work. Asmar testified that Hayes always provided his own tools, and that if Hayes needed a tool to perform work for Ginger C, it would be purchased for him with the cost deducted from Hayes's check.

Hayes testified that Asmar did not tell him he was an independent contractor, or that he worked job to job. Hayes testified that at the beginning of his employment relationship with Ginger C, he was paid $10 per hour and worked at least forty hours per week. Hayes testified that after two weeks on the job, Ginger C increased his pay to $12 per hour and compensated him for the use of his truck. Hayes testified that Asmar would pay him every Friday by check for work completed during the week, and that Asmar would write another check on Monday morning for work completed by Hayes on Saturday and Sunday. Hayes testified that he "never missed a week" of work with Ginger C. Hayes produced no pay

stubs in support of his claims about the amount he was paid per hour or about the number of hours worked, though he claimed they were available.

Hayes testified that the work he did for Ginger C ranged from changing light bulbs to fully renovating rental properties. Hayes explained that Asmar would call him every morning to tell him what work needed to be done on Ginger C's rental properties before meeting Hayes and other workers at a local hardware store to buy the materials needed. Hayes testified that, while he had "simple tools" from his forty years in the construction industry, he did not have all of the tools necessary for the work he did for Ginger C. Hayes confirmed that Asmar would purchase any tools he needed from a local hardware store and that the cost of these tools were deducted from his weekly checks.

Hayes testified that Asmar never told Hayes how to do work he was asked to perform, and that Asmar relied on Hayes to assess each job to determine whether he was qualified to perform requested work. Hayes claimed that over time, he began receiving maintenance calls directly from Ginger C's tenants and that he began carrying the keys to all of Ginger C's properties.

In June 2013, Ginger C purchased a triplex at 1500 Hinkson in Columbia ("Hinkson property"). The Hinkson property required repairs, including replacement of the concrete basement floor, before it could be rented to tenants. Ginger C solicited a bid from Columbia Maintenance Company for the concrete work. Hayes and Roland Nabhan ("Nabhan")[1] (Asmar's brother-in-law who also did renovation, maintenance, and repair

---

[1] The transcript of the hearing before the Administrative Law Judge indicates that Nabhan's named is spelled "Nabahan," but in a deposition entered into evidence, Nabhan spelled his last name as "N-a-b-h-a-n" for the court reporter. We use the spelling provided by Nabhan himself.

4

work for Ginger C) learned of the quote, and offered to perform the work for less than Columbia Maintenance Company's bid. Asmar testified that "Hayes claimed to be an expert in concrete laying and he said, 'We can do a much better job much cheaper for you,'" without giving a more precise bid. Nabhan's testimony supported Asmar's recollection. Nabhan testified that Asmar solicited a bid from "somebody else," but that he and Hayes said they could do the job for cheaper. Hayes testified to a different version of events, and claimed that Nabhan told Asmar, "No, no. Don't you do that. We're going to do it now." Hayes testified that he and Magee "griped about it" because neither had the skills necessary to perform concrete work.

On June 26, 2013, Nabhan arranged for the delivery of concrete and necessary tools to the Hinkson property so that he, Magee, and Hayes could replace the concrete floor in the basement. Nabhan worked outside with the concrete mixer truck, pouring concrete into a wheelbarrow. Magee moved the wheelbarrow where needed and dumped concrete on the floor. Hayes smoothed the concrete before it set up. At some point, concrete got into Hayes's boots, but he continued working.

After the job was complete, Hayes took off his boots to find that he had concrete burns on his legs. Hayes initially went to a local pharmacy and purchased a burn ointment, but later went to the hospital. Hayes was admitted to the burn unit, where he was diagnosed with third-degree burns. Skin grafts were required on both of Hayes's legs. Hayes spent four days in the hospital. Hayes testified that he missed two to three weeks of work as a result of his injuries. Hayes did not receive any further medical treatment for his injuries after mid-2013.

Hayes filed a claim for workers' compensation benefits on May 21, 2015, seeking compensation for injuries to his lower extremities and body as a whole, and seeking benefits from the Second Injury Fund because Ginger C failed to insure itself against claims for workers' compensation.[2]  Hayes's claim was heard by an Administrative Law Judge ("ALJ") on August 29, 2017, and September 6, 2017.  At the beginning of the hearing, the parties advised the ALJ they had stipulated that: (1) "[O]n June 26, 2013, while in the employment of Ginger C . . . , [Hayes] sustained an injury by accident in Columbia, Missouri;" (2) "[Ginger C] had notice of the injury and a claim for compensation that was timely filed;" and (3) "[Ginger C] has paid no benefits to date."  In addition, the parties confirmed with the ALJ that the agreed upon issues to be determined included whether Hayes's injury by accident "ar[ose] out of and in the course of employment," and whether the Second Injury Fund had liability given Ginger C's uninsured status.[3]

During the hearing, Hayes, Asmar, and Nabhan testified and the ALJ received exhibits.  Following the hearing, the ALJ issued a written decision on December 6, 2017, denying Hayes's claim ("ALJ Award").  The ALJ Award described the parties' stipulations, framing the first as whether "[Hayes] sustained an injury by accident while doing work for Ginger C . . . on June 26, 2013, in Columbia, MO."[4]  The ALJ Award made numerous

---

[2]Section 287.220.5 provides that if an employer fails to insure or self-insure against liability for workers' compensation claims, funds from the Second Injury Fund may be withdrawn to cover the fair, reasonable, and necessary expenses relating to an employee's injury or death.  All statutory references are to RSMo 2000 as supplemented through June 26, 2013, the date giving rise to Hayes's workers' compensation claim, unless otherwise indicated.

[3]The additional agreed upon issues to be determined were medical causation, liability for past medical expenses, and the amount and type of compensation to be paid assuming a compensable claim.

[4]The stipulation spread on the record at the beginning of the hearing before the ALJ was that on "June 26, 2013, *while in the employment of Ginger C* . . . , [Hayes] sustained an injury by accident."  (Emphasis added.) Hayes does not argue on appeal, however, that the stipulation spread on the record before the ALJ hearing is

findings of fact, including a finding that Hayes was not credible and his testimony could not be relied on, because "[h]is testimony was full of false statements and exaggerations." The ALJ Award found that Asmar and Nabhan were credible witnesses.

The ALJ Award concluded that Hayes's injury did not occur in the course and scope of his employment because Hayes was not an "employee" as defined by the Workers' Compensation Law,[5] and that even if Hayes was an employee as defined by the Workers' Compensation Law, Ginger C was not an "employer" subject to the Workers' Compensation Law. The ALJ thus concluded that Ginger C was not required to have workers' compensation insurance and that the Second Injury Fund had no liability to Hayes.

Hayes appealed the ALJ Award to the Commission. By a 2-1 vote, the Commission affirmed the ALJ Award and incorporated it by reference into the Commission's final award ("Final Award"). The dissenting commissioner concluded that Hayes's injury was compensable because, pursuant to section 287.040.1, a statutory employment relationship existed between Ginger C and Hayes.

Hayes filed this timely appeal. Additional facts are discussed as necessary to address Hayes's claims on appeal.

---

inconsistent with the characterization of the stipulation set forth in the ALJ Award, or that Ginger C made a binding stipulation that Hayes was an "employee" of Ginger C as defined by the Workers' Compensation Law. Instead, it appears from the record that the parties intended their "stipulated fact" to refer simply to an agreement that at the time of Hayes's injury, he was doing work for Ginger C, as noted in the ALJ Award. *See Boyer v. Nat'l Express Co*., 49 S.W.3d 700, 705 (Mo. App. E.D. 2001) (holding that a stipulation must be viewed in light of the result the parties were attempting to accomplish). Hayes's claim was tried in a manner that is consistent with this conclusion, as a substantial portion of the testimony and evidence presented to the ALJ was relevant only to resolving whether Hayes was an employee or an independent contractor. Moreover, the parties stipulated that an issue to be determined by the ALJ was whether Hayes was injured in the course and scope of employment with Ginger C, an issue that subsumes within its ambit whether Hayes was even an employee.

[5]The Workers' Compensation Law is found in Chapter 287.

7

**Standard of Review**

Section 287.495.1 controls our standard of review of the Final Award:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Because the Commission affirmed and adopted the findings and conclusions in the ALJ Award, we review the ALJ's findings and conclusions for error. *McDowell v. St. Luke's Hosp. of Kansas City*, 572 S.W.3d 127, 131 (Mo. App. W.D. 2019).

"'We review the whole record to determine whether there is sufficient and substantial evidence to support the award or if the award is contrary to the overwhelming weight of evidence.'" *Id.* (quoting *Gleason v. Treasurer of State of Mo.-Custodian of Second Injury Fund*, 455 S.W.3d 494, 497 (Mo. App. W.D. 2015)). We defer to the Commission's factual findings, including those findings about the credibility of witnesses. *Id.* We "'may not substitute [our] judgment on the evidence, and when the evidence before an administrative body would warrant either of two opposing findings, the reviewing court is bound by the administrative determination, and it is irrelevant whether there is supportive evidence for the contrary finding.'" *City of Columbia v. Palmer*, 504 S.W.3d 739, 744 (Mo. App. W.D. 2016) (quoting *Riley v. City of Liberty*, 404 S.W.3d 434, 439 (Mo. App. W.D.

8

2013)). Any determinations of law made by the Commission, though, are reviewed *de novo*. *Id.*

## Analysis

Hayes presents two points on appeal, both of which challenge the Commission's conclusion that Hayes's injury was not compensable under the Workers' Compensation Law.

### *Point One: Existence of Employer-Employee Relationship*

Hayes's first point on appeal claims that the Commission erred in concluding that Ginger C was not an employer, and that he was not an employee, as contemplated by Chapter 287. Specifically, Hayes claims that "the facts found by the Commission do not support the award and such findings are not supported by competent and substantial evidence," in that "the overwhelming weight of the evidence proves that . . . Ginger C was a construction industry employer having at least one employee;" that "Ginger C employed five or more employees;" and that "at the time of his accident [Hayes] was working as an employee for Ginger C." [Appellant's Brief, p. 17]

"'The Workers' Compensation Law provides the exclusive remedy against employers for injuries covered by its provisions.'" *State ex rel. Tri-Cty. Elec. Coop. Ass'n v. Dial*, 192 S.W.3d 708, 710 (Mo. banc 2006) (quoting *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 621-22 (Mo. banc 2002)). "The claimant in a workers' compensation case has the burden to prove all the essential elements of [his] claim . . . ." *Jefferson City Country Club v. Pace*, 500 S.W.3d 305, 313 (Mo. App. W.D. 2016). Section 287.120.1 provides that "[e]very employer subject to the provisions of this chapter shall be liable, irrespective

9

of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment." Thus, section 287.120.1 obligated Hayes to prove that, at the time of his injury: (1) Ginger C was an "employer" as defined by Chapter 287; (2) Hayes was an "employee" as defined by Chapter 287; (3) Hayes suffered personal injury by accident; and (4) Hayes's injury arose out of and in the course of his employment with Ginger C. The Final Award concluded that Hayes failed to prove two of these essential elements for recovery: that Ginger C was an employer, and that Hayes was an employee of Ginger C.

Hayes's first point on appeal challenges both of these conclusions, and is multifarious in violation of Rule 84.04. *Kirk v. State*, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017) (holding a point relied on violates Rule 84.04 if "it groups together multiple, independent claims rather than a single claim of error"). A multifarious point on appeal preserves nothing for appellate review. *Id.* However, as explained in this opinion, resolution of Hayes's claim of error involving his status as an employee of Ginger C is sufficient to resolve this appeal. As a result, we exercise our discretion to review the merits of that claim *ex gratia*. *See Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 (Mo. banc 2018); *Spence v. BNSF Ry. Co.*, 547 S.W.3d 769, 779 n.12 (Mo. banc 2018).

Whether Hayes was an employee of Ginger C for purposes of recovery under the Workers' Compensation Law is a question of law. *Chouteau v. Netco Constr.*, 132 S.W.3d 328, 332 (Mo. App. W.D. 2004). Section 287.020.1 defines "employee" as "every person in the service of any employer, as defined in this chapter, under any contract of hire, express

or implied, oral or written, or under any appointment or election, including executive officers of corporations." To establish an employer-employee relationship, a claimant must demonstrate that "he worked in the service of the alleged employer and the employer controlled the services." *Chouteau*, 132 S.W.3d at 332. "'The pivotal question in determining the existence of an employer-employee relationship is whether the [alleged] employer had the right to control the means and manner of the service, as distinguished from controlling the ultimate results of the service.'" *Id.* (quoting *DiMaggio v. Johnston Audio/D & M Sound*, 19 S.W.3d 185, 188 (Mo. App. W.D. 2000)).

The term "independent contractor" is not defined in Chapter 287, but in the context of workers' compensation claims has been held to be "one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer, except as to the final result of his work." *Id.* Key to the determination of whether a workers' compensation claimant is an employee or an independent contractor is the amount of control exercised by the alleged employer. *Id.*

> In determining if the employer had control over the employee, courts have examined a number of factors, including: 1) the extent of control; 2) the actual exercise of control; 3) the duration of employment; 4) the right to discharge; 5) the method of payment; 6) the degree to which the alleged employer furnishes the equipment; 7) the extent to which the work is the regular business of the employer; and 8) the employment contract.

*Busby v. D.C. Cycle Ltd.*, 292 S.W.3d 546, 550 (Mo. App. S.D. 2009). "'No one factor is dispositive, but each is relevant to the issue.'" *Id.* (quoting *Burgess v. NaCom Cable Co.*, 923 S.W.2d 450, 452 (Mo. App. E.D. 1996)).

11

The Final Award considered the factors outlined in *Busby* and explained the ALJ's conclusion that Hayes was not an employee of Ginger C as follows:

> Mr. Asmar and [Hayes] both testified Mr. Asmar was not present at the job sites and did not control or direct [Hayes] on how to do his work. Mr. Asmar decided what work was to be done, and [Hayes] determined how to do the work. [Hayes's] hours worked were up to him. The only checks in evidence indicate [Hayes's] hours worked were erratic. Mr. Asmar testified [Hayes] was free to turn down maintenance calls and was free to take other jobs while performing work for Ginger C. [Hayes] was paid by the job based on the amount of labor and materials the job required. Ginger C did not provide equipment or tools, and [Hayes] had his own tools. Ginger C's regular business is apartment rental, and the company was not hired to build or remodel. Ginger C did not provide any health insurance, sick leave or vacation benefits. [Hayes] produced no payroll records, W2 forms, or tax records to establish employment.

This legal conclusion was supported by several related factual findings, including that: (1) Asmar testified that everybody working for him in 2013 was an independent contractor and that he made it clear they did work by the job; (2) Ginger C had no employees in 2013 and did not issue any W2s; (3) Asmar bought tools for Hayes to keep and took the cost from Hayes's check; (4) Hayes was reimbursed if he paid for materials himself; (5) Asmar did not tell Hayes how to do his work, and instead relied on Hayes to tell him what had to be done to perform requested work; (6) Asmar left the hours worked up to Hayes, whose hours changed from job to job; (7) Hayes worked sporadically for Ginger C from April 1, 2013, through July 2013, and typically less than forty hours a week; (8) calls for maintenance work from tenants went directly through Asmar, and Hayes had the ability to turn down any request from Asmar to address such calls; (9) Hayes was not available to work for Ginger C on many occasions because he was working another job in Moberly; (10) Asmar paid Hayes by check every Friday and Monday (if weekend work was performed) and

never withheld taxes; (11) Hayes and Nabhan outbid a separate bidder for the concrete work on the Hinkson property; (12) Asmar did not tell Hayes how to do the concrete work on the Hinkson property and was not there when the work was performed; and (13) Asmar and Nabhan were credible witnesses while Hayes was not.

Hayes disputes the legal conclusion that he was not an employee. In doing so, Hayes dispels many of the aforesaid unfavorable factual findings as "simply conclusory," and highlights evidence Ginger C and/or Asmar failed to submit that could have lent support to Ginger C's contention that Hayes was an independent contractor. These arguments ignore our standard of review. "The court, on appeal, shall review only questions of law," and in the absence of fraud (which is not alleged here) "the findings of fact made by the [C]ommission . . . shall be conclusive and binding." Section 287.495.1. We have no authority to second guess the Commission's factual findings.

Hayes's arguments also ignore that he bore the burden to prove he was an employee of Ginger C. Though Ginger C did not have the burden to prove that Hayes was an independent contractor and not an employee, the Final Award found Asmar's testimony to be credible--a finding by which we are bound. *McDowell*, 572 S.W.3d at 131.

Hayes also emphasizes evidence he claims should have been relied upon by the Commission to reach a different conclusion about his status after applying the *Busby* factors. Hayes notes that: (1) that there was no clear agreement between Ginger C and Hayes about the work to be performed on the Hinkson property as there was no formal bid and no specific price for the work to be performed; (2) Hayes was arguably an at-will employee who worked for an hourly wage; (3) Asmar made statements to Hayes's parole

13

officer that led her to believe Hayes was an employee of Ginger C; (4) Asmar maintained a rental account for workers to use to obtain necessary equipment and materials; and (5) Asmar had ultimate authority and control over Hayes's work because Asmar identified the work that needed to be performed and the men he wanted to perform the work. This "contrary evidence" is not relevant, however, to the "pivotal question" in determining whether Hayes was an employee: Did Ginger C have the right to control *the means and manner* of Hayes's work or did Ginger C simply have the right to control the ultimate result of Hayes's work? *See Chouteau*, 132 S.W.3d at 332.

The Final Award concluded that that Ginger C did not exercise the requisite amount of control over Hayes's work so as to render Hayes an employee of Ginger C. The record as a whole supports this conclusion. Hayes's own testimony established that Asmar did not provide him direction beyond telling Hayes what he wanted the final result to be because Asmar had no experience in construction. Hayes testified: "Basically [Asmar would] say, 'This needs to be done, this needs to be done, this needs to be done.' But as far as figuring out which way to do it, that's on me or on whoever." Hayes also testified that the hours he worked were up to him, not Asmar. Hayes testified that he provided his own tools that he had accumulated in forty years of working in the construction industry when working for Ginger C, and to the extent that he did not have a tool needed, Ginger C would purchase the tool and take the cost out of Asmar's pay. Asmar's testimony established that Asmar's hours for Ginger C were erratic, and established that Hayes was free to turn down maintenance calls and to work on other jobs.

14

Based on the record as a whole, we cannot conclude that the facts found by the Commission (as to which we defer) fail to support the Final Award. Specifically, we cannot conclude that the facts found by the Commission, viewed in light of the record as a whole, fail to support the legal conclusion that Hayes was not an employee of Ginger C as contemplated by section 287.020.1.

Because there was sufficient competent evidence in the record to support the conclusion that Hayes was an independent contractor and not an employee of Ginger C for purposes of recovery under the Workers' Compensation Law, we need not address Hayes's multifarious claims of error regarding Ginger C's status as either an employer with five or more employees, or a construction industry employer with one or more employees.

Point One is denied.

*Point Two: Statutory Employment*

Hayes's second point on appeal argues that the Commission erred in denying his claim for workers' compensation benefits because the overwhelming weight of the evidence proved that at the time of his accident, he had a statutory employment relationship with Ginger C. This argument implicates section 287.040.1,[6] which provides that:

> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

---

[6]We remind that all statutory references are to the version of Chapter 287 in force and effect as of the date of Hayes's injury on June 26, 2013.

15

The statute is designed "to prevent employers from circumventing the requirements of the [Workers' Compensation Law] by hiring independent contractors to perform work the employer would otherwise perform." *Bass v. Nat'l Super Markets, Inc.*, 911 S.W.2d 617, 619 (Mo. banc 1995). The statute "allows an injured employee to recover workers' compensation from the company if injured, just as if the work had not been farmed out to an independent contractor." *McCracken v. Wal-Mart Stores East, LP*, 298 S.W.3d 473, 480 (Mo. banc 2009).

Hayes's second point on appeal is in the alternative to his first, as the premise of the second point on appeal is that Hayes was ***not*** an employee but was instead an independent contractor who should nonetheless receive the benefit of protection under the Workers' Compensation Law. Hayes never asked the ALJ to decide this issue, however. None of Hayes's evidence or argument sought an alternative determination that Ginger C was a statutory employer should the ALJ conclude that Hayes was not an employee but was instead an independent contractor.

We recognize, however, that Hayes's application for review permitted the Commission to "review the evidence, or, if considered advisable, as soon as practicable hear the parties at issue, their representatives and witnesses" and to "make an award . . . as specified in section 287.470." Section 287.480.1. And section 287.470 authorized the Commission to "review any award and on such review . . . make an award ending, diminishing or increasing the compensation previously awarded." In other words, the Commission had the authority to consider the issue of Ginger C's status as a statutory employer assuming it was asked to do so. *See Long v. City of Hannibal*, 670 S.W.2d 567,

16

569-70 (Mo. App. E.D. 1984) (holding that because an ALJ decision is not final, the Commission can reach issues not addressed by the ALJ assuming they are raised with the Commission). Hayes's application for review included the bare assertion that "[t]he ALJ erred in not finding and adjudicating the question of statutory employment," though Hayes afforded the Commission no further argument, evidence, or analysis on the issue of Ginger C's statutory employment status. His bare assertion, generously read, raised the issue of statutory employment with the Commission. We therefore have the authority to review Hayes's claim of error on appeal. *See Archer v. City of Cameron*, 460 S.W.3d 370, 377 (Mo. App. W.D. 2015) ("'An issue appropriate for, but not addressed with the [C]omission, cannot be litigated on appeal.'" (quoting *St. John's Mercy Health Sys. v. Div. of Emp't Sec.*, 273 S.W.3d 510, 516 (Mo. banc 2009))).

The Commission affirmed the ALJ Award, and thus effectively rejected Hayes's contention that the ALJ erred in not finding and adjudicating the question of statutory employment. The dissenting commissioner felt Hayes should be entitled to recovery based on a statutory employment relationship with Ginger C.

To successfully establish a statutory employment relationship, Hayes, as the claimant, had the burden to prove that (1) his work was performed pursuant to a contract, (2) his injury occurred on or about the premises of Ginger C, the alleged statutory employer, and (3) the work was done in the usual course of Ginger C's business. *See McCracken*, 298 S.W.3d at 480. During the hearing before the ALJ, Hayes steadfastly argued that he had no contract, written or oral, with Ginger C to perform work because he was an employee. Hayes offered no affirmative evidence to sustain his burden on the first

17

element of a statutory employment relationship. However, the ALJ Award found that Asmar's credible testimony established that Hayes and Nabhan submitted a bid for the concrete work at the Hinkson property which Asmar accepted on Ginger C's behalf. The ALJ Award thus supports the presence of an oral agreement between Ginger C and Hayes to perform the concrete work on the Hinkson property, the first element of a statutory employment relationship.

The parties stipulated that Hayes was injured while performing work for Ginger C. The ALJ Award found that Hayes's injury occurred while Hayes was performing the concrete work on the Hinkson property. The ALJ Award establishes the second element of a statutory employment relationship.

Thus, the question of whether a statutory employment relationship existed turns on whether the work Hayes was performing at the time of his injury was in the usual course of Ginger C's business, the third element. "Whether a particular sort of work is within a party's usual course of business is a fact-driven inquiry; there is no 'litmus paper' test." *McCracken*, 298 S.W.3d at 480 (quoting *Ferguson v. Air-Hydraulics Co.*, 492 S.W.2d 130, 135 (Mo. App. 1973). In *Bass*, we defined a putative statutory employer's "usual business," as the term is used in section 287.040 as:

> those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.

911 S.W.2d at 621. The definition of "usual business" is intended "to exclude 'specialized or episodic work that is essential to the employer but not within the employer's usual

18

business as performed by its employees.'" *McCracken*, 298 S.W.3d at 480 (quoting *Bass*, 911 S.W.2d at 621).

Hayes argues that the "usual business" of Ginger C should be viewed broadly to include all renovation, repair, and maintenance activities performed at Ginger C's rental properties. Ginger C and the Second Injury Fund argue that the "usual business" of Ginger C should be viewed more narrowly and thus limited to the activity Hayes was engaged in at the time of his injury--concrete work.

By its plain terms, the inquiry required to determine statutory employment status is tied to the activity that resulted in injury. The first element of statutory employment status requires a determination that there was a contract to perform the activity that resulted in injury. The second element of statutory employment status requires a determination that the activity which caused the injury was being performed on the premises of the putative statutory employer. It logically follows that the third element of statutory employment status similarly requires a determination that the activity that resulted in injury was work done in the usual course of Ginger C's business.

Here, the activity that resulted in Hayes's injury was concrete work. There was no evidence that concrete work was routinely performed by Ginger C on its rental properties. Asmar testified that the concrete work done on the Hinkson property was "not something we [had] ever done before" and "[n]ot something we ever did afterwards." Hayes presented no evidence from which the Commission could have concluded that the concrete work which resulted in Hayes's injury was work that was routinely performed by Ginger C on a regular or frequent schedule.

19

Nor was there any evidence presented supporting a conclusion that concrete work of the nature performed at the Hinkson property would have required Ginger C to hire permanent employees to perform the work absent the agreement with Hayes and Nabhan. To the contrary, the ALJ found that Ginger C sought and secured a bid from a third party contractor to perform the concrete work before that bid was undercut by Hayes and Nabhan. The evidence presented during the hearing before the ALJ supports no other conclusion than that the concrete work required at the Hinkson property was specialized and episodic. *See McCracken*, 298 S.W.3d at 480 (holding that "usual business" excludes specialized or episodic work).

Hayes did not sustain his burden to establish a statutory employment relationship with Ginger C pursuant to section 287.040.1.

Point Two is denied.

## Conclusion

The Commission's Final Award is affirmed.

_____
Cynthia L. Martin, Judge

All concur

20