# In the Missouri Court of Appeals
# Eastern District
### DIVISION FOUR


| | | |
|---|---|---|
| MARAL ANNAYEVA, | ) | No. ED107558 |
| | ) | |
| Claimant/Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| vs. | ) | |
| | ) | |
| SAB OF THE TSD OF THE CITY OF ST. LOUIS, | ) | |
| | ) | |
| | ) | |
| Employer/Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TREASURER OF MISSOURI AS CUSTODIAN OF THE SECOND INJURY FUND, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | Filed: July 30, 2019 |

### **OPINION**

Maral Annayeva ("Claimant") appeals the Labor and Industrial Relations Commission's (the "Commission") decision affirming the decision of the Administrative Law Judge (the "ALJ") denying Claimant's workers' compensation claim. In affirming the ALJ's decision, the Commission determined that Claimant failed to show that she sustained an injury arising out of and in the course of her employment because "there was nothing about [Claimant's] work that caused her to fall" and the accident occurred before Claimant clocked in for work. On appeal,

1

Claimant argues that the Commission erred by finding that: Claimant did not prove that her accident "arose out of" her employment because there was competent and substantial evidence that Claimant's fall occurred as a result of an accumulation of salt, dirt, and moisture on her employer's hallway floor (Point I); Claimant did not prove that her injuries occurred "in the course of" her employment because, although she had not clocked in, she was walking inside her place of employment on her way to her assigned work area when she slipped and fell (Point II); and Claimant failed to prove a medical causal connection between her accident and her injuries because there was a unanimity of medical opinion from board-certified psychiatrists that Claimant's subjective complaints are an expected manifestation of her diagnosed Somatic Symptom Disorder and are not a result of lying or malingering (Point III). We find that the Commission's award concluding that Claimant's injury did not arise out of and in the course of her employment was unsupported by competent and substantial evidence. Accordingly, we reverse and remand.

## I.     Factual and Procedural Background

Claimant began working for the Special Administrative Board of the Transitional School District of the City of St. Louis ("Employer") on October 29, 2007. Her last position with Employer was that of a high school teacher at Roosevelt High School teaching English as a second language. On January 8, 2013, Claimant sustained injuries after she slipped and fell in Employer's hallway at the beginning of her work day. Claimant subsequently filed a claim for workers' compensation. On February 14, 2018, a hearing was held before an ALJ at the St. Louis Division of Workers' Compensation. At the hearing, Claimant testified that she arrived at work at around 7:30 a.m. on January 8, 2013, and parked her car in the school's parking lot (where students and teachers park) next to the school building. She walked from the parking lot to the

2

school's main entrance carrying a bag with curriculum folders, student papers and tests, and lesson plans. Claimant always used this entrance to enter the school. When she arrived at the front entrance, she walked through a pair of double doors; there were no mats on the outside of the building, between the two sets of doors, or on the inside of the second set of double doors on which she could wipe her feet. After she entered the building, Claimant was heading to the "clock room" to clock in when she slipped on the floor and fell forwards, landing on her hands and knees. The guards at the entrance rushed over and helped her get up and sit on a chair. When she sat down, she noticed that her clothes were dirty. Claimant was taken to the nurse's office where she filled out a report of injury ("Injury Report"). In the Injury Report, Claimant wrote that she had slipped, however, when asked to specify the conditions that caused the accident, she wrote that she "could not determine the cause of the accident."

That same day, Claimant went to the emergency room and received treatment and medication; Claimant also returned to the emergency room the following day due to the pain she was experiencing. Subsequently, Claimant returned to work briefly, but experienced too much pain and could not continue working. Over time, Claimant continued treatment for her injuries that she claimed she sustained from the fall. Her medical records indicated that she received medical treatment, including: injections to her knee, spine adjustments, an MRI of her head, x-rays of her lumbar spine, water therapy, neurological evaluations, and was prescribed psychiatric medication. Both parties presented expert testimony of medical professionals who performed independent medical and psychiatric examinations of Claimant and also presented testimony of vocational rehabilitation counselors, who conducted vocational assessments to determine Claimant's employability in the open labor market.

On May 18, 2018, the ALJ entered his award denying compensation for benefits because Claimant failed to prove the issue of medical causation. The ALJ found that Claimant had "failed to provide credible testimony to [the] Court" and found that her testimony regarding her "injuries and their subsequent effects verged on the point of malingering." Further, the ALJ found Claimant's experts' opinions "specious" because they were based on Claimant's "own subjective description of her maladies." The ALJ concluded that there was "little or no objective medical finding to support any of Claimant's anomalies." The ALJ further concluded that "Claimant has not met her burden of showing the incident of January 8, 2013 was the prevailing factor causing the physiological and/or psychological complaints[;]" therefore, the ALJ denied Claimant's claim on the basis of lack of medical causation. As to Second Injury Fund ("SIF"), the ALJ concluded that the evidence did not show a compensable injury, and thus, SIF had no liability in this case.

The majority of the Commission affirmed the decision of the ALJ with a supplemental opinion in which it denied compensability of Claimant's claim based upon a finding that Claimant's injuries did not arise out of and in the course of her employment. In regards to the hazardous condition of the hallway, the Commission highlighted that Claimant had first indicated during her testimony that the condition of the tile was "normal" and, after she was asked several follow-up questions, she explained that there were "some particles of dirt, ice, dust, [and] moist[ure]" on the floor due to "foot traffic." Thus, the Commission held that, "[b]ecause [Claimant] did not focus on the alleged hazardous condition of the floor until specifically asked by her attorney, [Claimant's] testimony on the alleged hazardous condition is questionable."[1] The Commission also found that Claimant's medical records did not "indicate any mention of a

---

[1] The Commission made this credibility finding based upon its reading of the transcript of the proceedings before the ALJ, where Claimant testified.

hazardous condition regarding the hallway floor," and noted that the Injury Report that Claimant filled out on the day she fell included Claimant's statement that she "could not determine the cause of the accident." The Commission concluded that the "risk source was walking; [Claimant] was walking on an even, flat surface when she fell. There was nothing about Claimant's work that caused her to fall." The Commission also found that Claimant was "injured *while* she was at work, but not *because* she was at work" (emphasis in original). Noting that Claimant had not even clocked in for work, the Commission found that "[Claimant] was not in her course of employment at the time of the incident because she had not started for the day." The Commission further held that, because Claimant did not establish that her injury arose out of and in the course of her employment, the remaining issues were moot.

This appeal follows.

## II.     Standard of Review

On appeal, this Court reviews the Commission's decision to determine whether it is "supported by competent and substantial evidence upon the whole record." *Miller v. Mo. Highway & Transp. Comm'n*, 287 S.W.3d 671, 672 (Mo. banc 2009); Mo. Const. art. V, § 18; *see also White v. ConAgra Packaged Foods, LLC,* 535 S.W.3d 336, 338 (Mo. banc 2017).

> Pursuant to [§] 287.495.1,[2] this Court shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
> (1) That the [C]ommission acted without or in excess of its powers;
> (2) That the award was procured by fraud;
> (3) That the facts found by the [C]ommission do not support the award; [and]
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

---

[2] All references are to Mo. Rev. Stat. Cum. Supp. 2013.

*Porter v. RPCS, Inc.*, 402 S.W.3d 161, 171 (Mo. App. E.D. 2013). "The Commission's findings will not be disturbed unless they are unsupported by competent and substantial evidence on the whole record." *Thompson v. Treasurer of Missouri*, 545 S.W.3d 890, 893 (Mo. App. E.D. 2018). While we defer to the Commission on issues concerning credibility and the weight given to conflicting evidence, we independently review questions of law without deference to the Commission's findings. *Id*. "When the relevant facts are not in dispute, the issue of whether an accident arose out of and in the course of employment is a question of law requiring *de novo* review." *Wright v. Treasurer of Missouri as Custodian of Second Injury Fund*, 484 S.W.3d 56, 59 (Mo. App. E.D. 2015) (quoting *Miller,* 287 S.W.3d at 672).

### III.    Discussion

Point I & II

Claimant asserts three points on appeal. We will consider Claimant's first and second points together because both points concern the Commission's determination of whether Claimant's injuries arose out of and in the course of her employment.

"In 2005, the [Missouri Workers' Compensation Act] was revised to provide that its provisions are to be construed strictly and to require the evidence to be weighed impartially without giving any party the benefit of the doubt." *Miller,* 287 S.W.3d at 673; *see also* § 287.800. Specifically, § 287.020.2 narrowed the definition of "accident":

> 2. The word "accident" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.

*Miller,* 287 S.W.3d at 672–73. "The workers' compensation statutes expressly instruct that section 287.020.3(2) controls the determination of whether an employee's injury

6

shall be deemed to have arisen out of and in the course of employment." *Porter,* 402

S.W.3d at 171. Section 287.020.3(2) states that:

> An injury shall be deemed to arise out of and in the course of the employment only if:
> (a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
> (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

Claimant limits the argument in her first two points on appeal to the application of

§ 287.020.3(2)(b). A workers' compensation claimant bears the burden of showing that a causal

connection exists between his or her injury and his or her work activity in order for the injury to

"arise out of and in the course of employment." *Porter*, 402 S.W.3d at 172. A causal connection

between a claimant's work activity and his injury, as would support a workers' compensation

claim, first requires identification of the risk source of a claimant's injury and then requires a

comparison of that risk source or activity to normal nonemployment life. *Gleason v. Treasurer of*

*State of Missouri-Custodian of Second Injury Fund*, 455 S.W.3d 494, 499 (Mo. App. W.D.

2015). "The injury must have occurred because the risk was due to some condition of the

worker's employment[;] [i]n other words, the employee must have been injured because she was

at work and not simply while she was at work." *Randolph County v. Moore-Ransdell*, 446

S.W.3d 699, 706 (Mo. App. W.D. 2014). Thus, we first examine the Commission's

determination of the risk source of claimant's injury before reviewing whether Claimant's injury

arose out of and in the course of her employment.

*A. The Commission's rejection of Claimant's testimony and its determination of the risk source of Claimant's injury*

In determining the risk source, the Commission cited the holding in *Miller*, 287 S.W.3d at 674,[3] and concluded that "here, the risk source was walking; [Claimant] was walking on an even flat, surface when she fell. There was nothing about [Claimant's] work that caused her to fall." In rejecting Claimant's testimony regarding the condition of the floor on the day she fell, the Commission stated:

> We … do not find credible that the condition of the hallway at the date of the injury presented a hazard or risk to [Claimant]. When testifying about the condition of the floor at the hearing before the [ALJ], [Claimant] initially indicated in her testimony that the floor was "normal." After several follow-up questions by her attorney, [Claimant] further testified that the floor was dirty due to "foot traffic," including "some particles of dirt, ice, dust, [and] moist[ure]. Because [Claimant] did not focus on the alleged hazardous condition of the floor until specifically asked by her attorney, [Claimant's] testimony on the alleged hazardous condition is questionable.

(internal citations omitted). The Commission further explained that neither the medical records nor the Injury Report "corroborated [Claimant's] testimony regarding the alleged hazardous condition of the hallway floor at the time of the injury."

Generally, our Court "defer[s] to the Commission on issues involving the credibility of witnesses and the weight to be given [to] testimony, and we acknowledge that the Commission may decide a case upon its disbelief of uncontradicted and unimpeached testimony." *Abt v. Mississippi Lime Co.*, 388 S.W.3d 571, 577 (Mo. App. E.D. 2012). "However, 'where the record reveals no conflict in the evidence or impeachment of any witness, the reviewing court may find

---

[3] In *Miller*, the Supreme Court of Missouri held that the claimant's injury to his knee while working on a road repair crew arose during the course of his employment, but did not arise out of his employment; the claimant was walking on an even surface at work when his knee happened to pop, nothing about his work caused it to do so, and thus, the claimant's work was not a prevailing factor in sustaining his injury. *Miller*, 287 S.W.3d at 674.

8

the award was not based upon disbelief of the testimony of the witnesses.'" *Id.* at 578 (quoting *Corp v. Joplin Cement Co.*, 337 S.W.2d 252, 258 (Mo. banc 1960)). Typically, the Commission is free to disbelieve uncontradicted and unimpeached testimony; this rule applies when "the Commission expressly declared that it disbelieves uncontradicted or unimpeached testimony, or if reference to the award shows that the Commission's disbelief of the employee or his or her doctor was the basis of the award[.]" *Cardwell v. Treasurer of State of Missouri*, 249 S.W.3d 902, 907 (Mo. App. E.D. 2008). But, "[t]he Commission may not arbitrarily disregard and ignore competent, substantial and undisputed evidence of witnesses *who are not shown by the record to have been impeached*, and the Commission may not base their finding upon conjecture or their own mere personal opinion unsupported by sufficient competent evidence." *Id.*; *Abt,* 388 S.W.3d at 578 (emphasis in original).

In reviewing the Commission's award, we find that the Commission's rejection of Claimant's testimony regarding the condition of the floor was based upon conjecture unsupported by sufficient competent evidence. Traditionally, "the Commission has not been reluctant to exercise its 'trier-of-fact' prerogative to disbelieve the testimony of witnesses, … and in doing so, forcefully outline[s] its reasons for not giving full credence to disbelieved witnesses." *Houston v. Roadway Express, Inc.*, 133 S.W.3d 173, 180 (Mo. App. S.D. 2004). Here, however, the Commission's final award characterized Claimant's testimony about substances on the floor as "questionable" because Claimant "did not focus on the alleged hazardous condition of the floor *until specifically asked by her attorney*" (emphasis added). The Commission's award does not express that Claimant was not credible because her rendition of the facts varied or that she had a history of being untruthful; nor is there any evidence in the record that contrary testimony was presented by Employer or that Claimant's testimony was

9

impeached. Rather, the Commission seems to have taken issue with the way in which Claimant's attorney examined his client and how Claimant answered her attorney's questions. In other words, the Commission's rejection of Claimant's testimony is not rooted in disbelief of her testimony, but is rather a criticism of the manner in which Claimant responded to the questions asked by her attorney. *See Abt,* 388 S.W.3d at 578–79. The Commission's basis for finding that Claimant's testimony on whether a substance was present on the floor was not credible is unsupported by competent and substantial evidence. *Cf. Adamson v. DTC Calhoun Trucking, Inc.*, 212 S.W.3d 207, 216 (Mo. App. S.D. 2007) (affirming the Commission's decision where "[t]he Commission found [c]laimant is not believable and, unfortunately presents with a history of being less than truthful"); *Porter*, 402 S.W.3d at 174 (affirming the Commission's award where "the Commission found there was a 'lack of any credible evidence of the circumstances of [claimant's] fall'"); *Thompson*, 545 S.W.3d at 892, 894 (affirming the Commission's award, in which the Commission relied solely on claimant's testimony that a foreign substance was present on the floor where claimant slipped; the Commission found claimant to be credible because she testified consistently in her deposition and before the ALJ that she slipped on a wet surface). The Commission's award does not provide any reasonable or substantial basis for refusing to believe the uncontradicted testimony of Claimant.

A review of Claimant's testimony before the ALJ reveals that Claimant was consistent in describing the condition of and the substances on the floor on the day of her fall. On direct examination, Claimant was asked the following questions:

Q:    The floor, once you got through the second set of doors and you're inside
       the building, what sort of floor is into this building?
A:    [It's] linoleum tile.
Q:    Linoleum?
A:    Linoleum tiles.
Q:    What was the condition of the floor in there?

10

A:     Normal, I think.
Q:     Did you say "normal"?
A:     Yes.
Q:     Okay. And was there any, anything broken? Anything chipped? Anything like that?
A:     I didn't mention I, I didn't see it.
THE COURT: You have to keep your voice up, I'm sorry, 'cause I can barely hear you….
Q:     Was there anything on the floor? Was it clean? Dirty? Can you say?
A:     Well, it wasn't clean. There was foot traffic, teachers pass by.
Q:     And in what way was it dirty? Did you see anything on the floor dirt-wise?
A:     There was some particles of dirt, ice, dust, [and] moist[ure]. The floor, the doors were open so the floor was slippery and moist….
Q:     Where were you headed when you entered the school that day?
A:     I was headed to the clock room where I go usually.
Q:     That's so you can clock in?
A:     Yes.
Q:     As you started to head to the clock room[,] what happened?
A:     I slipped and fell forward.
Q:     Did you trip over your coat or pants?
A:     No.
Q:     When you fell forward what happened next? Did you go all the way to the floor? Let me ask you –
A:     Yes, I went all the way to the floor….
Q:     When they helped you up[,] did you notice anything on your clothing?
A:     Yes, I was all in dirt….

A complete and objective reading of the transcript demonstrates that Claimant's response that the floor was "normal" was specifically about the physical condition (i.e., whether there were cracks or breaks) of the tile itself. The subsequent questioning was regarding any substances that were *on* the floor that could have contributed to the fall. Claimant's attorney specifically asked whether the floor was clean or dirty and Claimant confirmed that it was in fact dirty. When asked in which way, she explained that there was "dirt, ice, dust, [and] moist[ure]." The record does not indicate that opposing counsel objected to the attorney's line of questioning, nor was the line of questioning leading or suggestive (e.g., "Was there dirt, ice, dust, or moisture on the floor?") in order to prompt Claimant to give that specific response.

11

The Commission further provided that, aside from her testimony, neither her medical records nor the Injury Report evidenced that there was a hazardous condition on the hallway floor at the time of her fall. We find that the medical records would not be informative evidence of the hazardous condition of the floor, as the medical records are not indicative of hazardous conditions because their purpose was to provide proof of Claimant's medical history and diagnosis connected with the injury she suffered on January 8, 2013—not to provide proof of a hazard or risk present in the flooring of the hallway where she fell. *See Thompson*, 545 S.W.3d at 894 (noting that the Commission was "unpersuaded by the absence of any mention that [c]laimant slipped on a substance in her medical records"). As to the Injury Report, "[t]here is no requirement that Claimant must personally identify the specific cause of her fall; a reasonable inference regarding the cause was sufficient … because he or she will not know exactly what happened or what caused the fall." *Dorris v. Stoddard Cnty.*, 436 S.W.3d 586, 590 (Mo. App. S.D. 2014). The Commission stated that Claimant failed to specify in the Injury Report that the "ice, salt, or dirt on the floor caused her to slip" and instead wrote that she "could not determine the cause of her fall." However, the record indicates that Claimant specified (on direct examination) that there was snow, ice, salt, and dirt on the parking lot, and when she walked to the entrance of the school, there were no mats at the entrance to, in between, or inside the double doors. She also testified that, after falling, she noticed that her clothes were dirty and that there was "dirt, ice, dust, moist" on the floor being tracked in by "foot traffic." Further, on cross-examination, she explained that she wrote in the Injury Report that she "could not determine the cause of the accident" because she "didn't know, maybe, salt, maybe dirt, maybe moist[ure] [in the] linoleum [tile]," caused her fall, but she could not be sure *which* of those substances caused her fall. Claimant's testimony provided details of the circumstances surrounding her slip and fall,

12

and nothing in Claimant's testimony or in the record supports that she just fell or that her fall was caused by something other than substances on the floor in the hallway, as she claimed. *Cf. Porter*, 402 S.W.3d 174 (holding that claimant failed to identify specific risk or hazard that caused her fall in work bathroom where claimant could not remember any details of how she fell or what caused her to fall, no one witnessed claimant's fall, no one witnessed water or any other debris or material on the floor that could have caused the fall, claimant's clothes were not wet, oily, or sticky after falling, there were no holes or broken floor tiles, and, when found after falling, claimant said she lost her balance and fell when she reached out for the stall door); *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 511–12 (Mo. banc 2012) (finding that claimant failed to meet her burden of showing that her injury was compensable because she did not demonstrate that it was caused by a risk related to her employment activity when she turned, twisted her ankle, and fell out of her thick-heeled shoe after making coffee in the office kitchen).

The stated basis for the Commission's determination that Claimant's testimony was not credible is merely conjecture, as the record is devoid of conflicting evidence or testimony and the record does not provide any reasonable basis for refusing to credit Claimant's uncontradicted testimony. Thus, we find that the Commission's finding that Claimant's testimony regarding substances on the floor was not credible was unsupported by sufficient competent and substantial evidence. *See Knisley v. Charleswood Corp.,* 211 S.W.3d 629, 636 (Mo. App. E.D. 2007). As a result, the Commission's determination regarding Claimant's failure to prove that a hazard or risk was present is not supported by substantial and competent evidence, as Claimant's uncontradicted testimony showed that a foreign substance caused her fall. *See Porter,* 402 S.W.3d at 174.

B. *Point I: Claimant's injury arose out of her employment*

In her first point on appeal, Claimant argues that the Commission erred in concluding that Claimant's injury did not "arise out of" her employment because there was competent and substantial evidence to establish that her slip and fall was caused by the presence of a work-related risk source—an accumulation of salt, dirt, and moisture that was tracked into Employer's hallway from Employer's parking lot. "An injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and the risk involved … is one to which the worker would have been exposed equally in normal non-employment life." *Miller*, 287 S.W.3d at 674. "[A]n injury 'arises out of' the employment if it is a natural and reasonable incident thereof.…" *Dorris*, 436 S.W.3d at 593.

> A claimant is not required to prove both that the hazard from which her injury arose was related to her employment and that the hazard was one which she was not equally exposed to in her nonemployment life. Rather, the claimant has the burden of proving that her injury was caused by [a] risk related to her employment activity *as opposed to* a risk to which she was equally exposed in her 'normal nonemployment life.' Meaning, implicit in a finding that the claimant was exposed to the risk from which her injury arose *because* of her employment, is a finding that the claimant could have avoided the risk outside of her employment.

*Missouri Dep't of Soc. Services v. Beem,* 478 S.W.3d 461, 468 (Mo. App. W.D. 2015) (emphasis in original). In the present case, the Commission held that Claimant did not establish that her injury arose out of her employment because the "risk source was walking; [Claimant] was walking on an even, flat surface when she fell. There is nothing about [Claimant's] work that caused her to fall." We disagree.

"In *Johme*, the Supreme Court of Missouri made clear that it is irrelevant whether an injury occurs while the employee is engaged in a work-related activity, but instead the inquiry is whether the injury is deemed to arise out of employment." *McDowell v. St. Luke's Hosp. of*

14

*Kansas City*, 572 S.W.3d 127, 133 (Mo. App. W.D. 2019) (citing to *Johme*, 366 S.W.3d at 511–12). "In *Johme*, the employee's injury was caused by falling off a shoe while at work. There, nothing inherent to the workplace location or activity caused the employee to fall off her shoe." *Id.* Here, the cause of Claimant's injury was predicated on a risk inherent to Employer's workplace—a floor with "dirt, ice, dust, [and] moist[ure]." It is uncontested that Claimant slipped and fell in Employer's hallway and that she was employed by Employer. Consequently, being employed at the high school exposed her to that particular hazard, in that she walks through that same entrance every day and she walks to the clock room each work day. *See id*. Claimant's injury did not result because she was walking; it resulted from walking on Employer's allegedly unclean floor as a function of her employment and slipping on the foreign substance(s) present on that floor. Therefore, Claimant met her burden of establishing that her injury "arose out of" her employment because it resulted from a condition that was related to her employment. *See Wright*, 484 S.W.3d at 64 (holding that the injury claimant sustained when a chair in employer's lunchroom collapsed under him while sitting on it arose out of his employment; claimant did not suffer a general injury from the act of sitting itself, but sustained a particular injury because he was not exposed to that chair anywhere else but at work, as it was this particular chair that carried the risk of collapse and this chair was owned by the employer and on employer's premises when claimant sat in it to have lunch); *Beem*, 478 S.W.3d at 468 (finding that the risk source of employee's injury was slipping on ice in a parking lot controlled by her employer because her employment exposed her to that particular hazard); *Young v. Boone Elec. Coop.*, 462 S.W.3d 783, 790 (Mo. App. W.D. 2015) (finding that claimant's injury arose out of his employment "because there is nothing in the record to support a conclusion that he was equally exposed to the hazard of slipping on frozen dirt clods at that particular work site in his

15

nonemployment life"); *Dorris*, 436 S.W.3d at 592 ("There is no evidence in the record that claimant had any exposure to this particular hazard [(a crack in street)] during her nonemployment life and therefore, the record could not support a conclusion by the Commission that she was equally exposed to that hazard in her nonemployment life."); *Lincoln Univ. v. Narens*, 485 S.W.3d 811, 818 (Mo. App. W.D. 2016) (finding that claimant's injury to her ankle, which occurred when she stepped off a steep edge of a sidewalk on employer university's campus while walking to her car, arose out of and in the course of her employment; claimant was not injured because she was walking, but injured because while walking, she encountered a steep drop off on the sidewalk, which was a risk source that she would not have been equally exposed to outside of the workplace in normal nonemployment life); *Duever v. All Outdoors, Inc.*, 371 S.W.3d 863, 867–68 (Mo. App. E.D. 2012) (holding that claimant's injury was compensable when claimant slipped on ice in the parking lot controlled by employer).

Therefore, the Commission erred in finding that Claimant's injury did not arise out of her employment.

Point granted.

C. *Point II: Claimant's injury occurred in the course of her employment*

In her second point on appeal, Claimant argues that the Commission erred in finding that Claimant's injury did not occur "in the course of" her employment because she had not engaged in fulfilling her duties for the day. Specifically, Claimant argues that her injury occurred "in the course of" her employment because Claimant was injured as she was traveling upon Employer's premises and heading towards her assigned work area when she slipped and fell.

In the present case, the Commission held that "[Claimant] was not in her course of employment at the time of the incident because she had not started her day"; the Commission

16

noted that "[Claimant] had not even clocked in for work, was not on any work assignment and had not taken any action related to work before the incident." In support of this finding, the Commission cited to *Henry v. Precision Apparatus, Inc.*, 309 S.W.3d 341 (Mo. App. S.D. 2010)[4] for the proposition that an employee must be performing some type of work activity in his or her place of employment in order to receive workers' compensation benefits.

"'In the course of employment' refers to the time, place and circumstance of an employee's injury." *Kuykendall v. Gates Rubber Co.*, 207 S.W.3d 694, 704 n.9 (Mo. App. S.D. 2006).

> Before 2005, section 287.020.5 provided that injuries did not arise out of and in the course of employment unless employees were "engaged in or about the premises where their duties [were] being performed, or where their services require[d] their presence as a part of such service." In construing this provision, courts adopted the "extended premises" or "extension of premises" doctrine "as an exception to the general rule of noncompensability of injuries occurring on the trip to or from work."…
>
> Section 287.020.5 was amended in 2005 to read as follows: [i]njuries sustained in company-owned or subsidized automobiles in accidents that occur while traveling from the employee's home to the employer's principal place of business or from the employer's principal place of business to the employee's home are not compensable. The extension of premises doctrine is abrogated to the extent it extends liability for accidents that occur on property not owned or controlled by the employer even if the accident occurs on customary, approved, permitted, usual or accepted routes used by the employee to get to and from their place of employment.

---

[4] In *H*enry, the claimant arrived at his place of employment fifteen to twenty minutes before his scheduled start time. *Henry*, 309 S.W.3d at 342.

> After he put his tools on his workbench and was to begin his timesheet, a co-worker pulled his personal vehicle into a garage bay to fix a flat tire. Claimant heard someone say that the co-worker's truck was going to roll off the jack, so Claimant volunteered to get a rock to keep the truck from moving. As he was doing so, he tripped over something and heard a loud snap which resulted in a broken leg.

*Id*. The court held that the injury was not compensable because "the injury occurred prior to the time that Claimant was engaged in work activities and while Claimant was engaged in a non-work activity." *Id*.

17

*Narens*, 485 S.W.3d at 818–19. As a result, "the extension of premises doctrine is not totally eliminated but is now limited to situations where the employer ***owns or controls*** the area where the accident occurs." *Id*. at 819 (emphasis in original). "Because extension of premises cases involve injuries sustained before or after the actual performance of job duties, the legislature clearly contemplated and accepted compensability of injuries sustained as a result of work-related risks even though [an] employee was not engaged in the performance of job duties at the time (e.g.[,] going to or coming from [an] employer's worksite)." *Id*.

We note that Missouri courts have held that injuries occurring while "off the clock" that are incidental to fulfilling the duties of a claimant's employment are compensable. Specifically, Missouri courts have affirmed decisions in which employees have been awarded compensation for injuries that occurred while leaving work or taking a break, and those cases have hinged on whether the employee in each case was performing a task incidental to their employment. *See Beem,* 478 S.W.3d 467–68 (holding that claimant's slip and fall accident on an icy workplace parking lot, causing her to suffer a broken ankle, arose out of and in the course of employment, entitling her to workers' compensation benefits; although claimant was in the process of leaving the premises during a discretionary break to go home to let her dog out, claimant's employment exposed her to the particular hazard); *Wright*, 484 S.W.3d at 64 (holding that amendments to the workers' compensation statute's definitions of "arising out of employment" and "in the course of employment" did not bar recovery for claimant's injury based on what he was doing when he was injured, namely, eating lunch during an unpaid lunch break on employer's premises when the chair he was sitting on collapsed); *Narens*, 485 S.W.3d at 821–22.

In the present case, Claimant had entered Employer's premises carrying folders for the administration of tests, along with a curriculum folder, student papers, and lesson plans. There is

no dispute that Employer controlled the school building and that Claimant entered through the approved entrance she used every day. After entering the building, she headed toward the "clock room" in order to clock in, as required by Employer at the start of each work day. Claimant had to routinely pass through this same hallway in order to fulfill her duties as a teacher. Consistent with the cases above, Claimant demonstrated that there was sufficient competent and substantial evidence that Claimant's injury occurred in the course of her employment, as she was on Employer's premises reporting to clock in before heading to her assigned work area. *See Wright*, 484 S.W.3d at 63–64; *Narens*, 485 S.W.3d 811, 819–20.

Therefore, the Commission erred in finding that Claimant's injury was not compensable because Claimant's injury did not occur "in the course of" her employment simply because she had not yet clocked in.

Point granted.

Point III

In her third point, Claimant argues that the Commission erred in finding that Claimant failed to provide a medical causal connection between her accident and her injuries.

"Determinations with regard to causation and work relatedness are questions of fact to be ruled upon by the Commission." *Angus v. Second Injury Fund*, 328 S.W.3d 294, 299 (Mo. App. W.D. 2010). In addressing this point, "the Commission may not substitute an ALJ's personal opinion on the question of medical causation for the uncontradicted testimony of a medical expert." *Carkeek v. Treasurer of State-Custodian of Second Injury Fund,* 352 S.W.3d 604, 609 (Mo. App. W.D. 2011). "[T]he question of causation is one for medical testimony, without which a finding for claimant would be based upon mere conjecture and speculation and not on substantial evidence." *Van Winkle v. Lewellens Prof'l Cleaning, Inc*., 258 S.W.3d 889, 897 (Mo.

19

App. W.D. 2008). "The [C]ommission cannot find there is no causation if the uncontroverted medical evidence is otherwise." *Lewis v. Kansas Univ. Med. Ctr.*, 356 S.W.3d 796, 800 (Mo. App. W.D. 2011).

In the present case, the ALJ entered his award denying compensation for benefits on the basis of lack of medical causation. In reviewing the case, the Commission considered the issue of causation moot on the grounds that Claimant was unable to prove that her injury arose out of and in the course of her employment. Generally, where "the Commission affirms and incorporates the ALJ's decision in its award, we examine the ALJ's findings as adopted by the Commission." *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 774–75 (Mo. App. E.D. 2015). However, because the Commission did not render a decision as to the issue of causation and did not incorporate this argument in its award, as it rendered it moot, our Court is unable to address and review this point on appeal. *See Renda v. E. Metal Supply of Missouri, Inc.*, 414 S.W.3d 556, 560 (Mo. App. E.D. 2013) (holding that our Court may only address an issue that was determined by the Commission).

Therefore, the issue of whether there was a causal connection between Claimant's accident and her sustained injuries is to be determined by the Commission on remand.

### IV.     Conclusion

After review of the entire record, we cannot find substantial and competent evidence to support the finding of the Commission that Claimant's injury did not arise out of and in the course of her employment. Claimant's Points I and II are therefore granted. The Commission's award is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Colleen Dolan, Chief Judge

20

Kurt S. Odenwald, J., concurs.

Gary M. Gaertner, Jr., J., concurs.